```
                      UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF LOUISIANA

DIRECTV, LLC                                    CIVIL ACTION

VERSUS                                          NO: 13-487

HABIP ERTEM, ET AL.                             SECTION: R
```

**ORDER AND REASONS**

Plaintiff DirecTV moves for partial summary judgment on the question of defendants' liability.[1] The defendants have not filed an opposition. Therefore, the Court considers this motion unopposed. For the following reasons, the Court GRANTS the motion.

**I.   BACKGROUND**

DirecTV transmits satellite television programming to paying subscribers throughout the United States.[2] DirecTV has a proprietary right to its satellite programming,[3] and only makes its programming available to customers on a subscription or pay-

---

[1]  R. Doc. 18. Though styled a motion for summary judgment, the Court construes DirecTV's motion as a motion for partial summary judgment, as it does not request judgment on the question of damages at this time.

[2]  R. Doc. 1 at 2.

[3]  *Id.* at 3.

per-view basis.[4] DirecTV provides both residential and commercial subscriptions to its satellite programming, with residential subscriptions available at a lower rate than commercial subscriptions.[5] To keep people (and businesses) who have not paid for a subscription from viewing its programming without authorization, DirecTV encrypts its satellite transmissions.[6] Once a subscriber pays a subscription or license fee, DirecTV will authorize and enable the subscriber to unscramble and view its satellite programming.[7]

DirecTV filed this lawsuit on March 15, 2013, alleging that on June 16, 2012, defendants Habip Ertem and Ulusan, LLC d/b/a St. Charles Tavern ("St. Charles Tavern") received and displayed DirecTV satellite programming at St. Charles Tavern without DirecTV's authorization.[8] St. Charles Tavern is a commercial bar and restaurant business that serves food and alcohol and has an

---

[4]   R. Doc. 18-2 at 2 (Affidavit of Susan Galofaro, Director of Risk Management for DirecTV).

[5]   *Id.* at 3; R. Doc. 1. at 4.

[6]   R. Doc. 1. at 4; R. Doc. 18-2 at 2.

[7]   R. Doc. 1. at 4; R. Doc. 18-2 at 2.

[8]   R. Doc. 1.

estimated capacity of approximately 101-200 people.[9] DirecTV learned that St. Charles Tavern was displaying its satellite programming through one of its auditors, John W. Bailey. Bailey entered St. Charles Tavern on June 16, 2012, around 2:30 PM, and saw two television sets, one of which was displaying DirecTV programming.[10] To verify that the programming was indeed DirecTV's, Bailey asked the bartender "whether they could get 'channel 209'" and observed her check by "pulling up the DirecTV Guide and then selecting ESPN2 (CH 209)."[11] Defendants do not dispute that St. Charles Tavern was displaying DirecTV satellite programming on June 16, 2012.[12]

After receiving Bailey's report, DirecTV searched its records and determined that St. Charles Tavern did not have a valid DirecTV commercial account for St. Charles Tavern on June 16, 2012, nor was the bar authorized to display DirecTV satellite programming that day.[13] DirecTV's search of its records did

---

[9] See R. Doc. 18-9 at 6-7 (Habip Ertem's Responses to Requests for Admissions); id. at 14-15 (St. Charles Tavern Responses to Requests for Admissions); R. Doc. 18-3 at 2 (Affidavit of John W. Bailey).

[10] See R. Doc 18-2 at 3-4; R. Doc. 18-3 at 2-3.

[11] See R. Doc. 18-3 at 2.

[12] See R. Doc. 18-9 at 6 & 14.

[13] See R. Doc. 18-2 at 3-4.

reveal a *residential* account in the name of Adam Ertem, Habip Ertem's son, for a residential address in New Orleans.[14]

The complaint alleges that defendants' unauthorized display of DirecTV satellite programming at St. Charles Tavern violated two federal statutes: 47 U.S.C. § 605, which is part of the Cable Communications Policy Act of 1984, and 18 U.S.C. § 2511, which is part of the Electronic Communications Policy Act of 1986.[15] The complaint also includes a claim for conversion under state law.[16] The complaint seeks both monetary damages and injunctive relief, as well as costs and attorneys' fees.[17]

On May 9, 2014, DirecTV filed for summary judgment solely on the question of defendants' liability under 47 U.S.C. § 605,[18] with a request that the parties be allowed to provide further briefing on the question of relief should the Court find in

---

[14]   *See id.* at 4.

[15]   R. Doc. 1 at 6-8.

[16]   *Id.*

[17]   *Id.* at 9-10.

[18]   *See* R. Doc. 18-11 at 11. DirecTV did not rely on its claim under 18 U.S.C. § 2511 or its state-law conversion claim in support of its motion for summary judgment regarding defendants' liability. The Court, therefore, considers those claims abandoned.

4

DirecTV's favor on the question of § 605 liability.[19] Defendants filed no response to the summary judgment motion. This failure, of course, does not permit the Court to enter a "default" summary judgment. *Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). The Court may, however, accept the moving party's facts as undisputed when no opposition is filed. *Id.* Hearsay evidence and unsworn documents do not qualify as competent opposing evidence. *Jones v. State Farm Fire & Cas. Co.*, 677 F. Supp. 2d 923, 926-27 (E.D. La. 2009) *aff'd sub nom. Jones v. State Farm Fire & Cas. Co., Inc.*, 392 F. App'x 347 (5th Cir. 2010) (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987)). Although defendants filed Answers to DirecTV's Complaint on May 24, 2013,[20] they are unsworn. Therefore, defendants have presented no summary judgment evidence.

**II. LEGAL STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

---

[19]   *See id.*

[20]   R. Doc. 10.

(1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence sufficient to demonstrate the existence of a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

6

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmoving party may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.; Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

**III. DISCUSSION**

    **A.   Liability Under 47 U.S.C. § 605**

Section 605(a) makes it unlawful for any entity to intercept and display satellite cable programming without proper authorization. *See* 47 U.S.C. § 605(a) ("No person not being authorized by the sender shall intercept any radio communication

and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person."). Although § 605(a) refers to radio communication, the protection afforded to radio communications extends to satellite television communications. *See, e.g.*, *United States v. Harrell*, 983 F.2d 36, 39 (5th Cir. 1993); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 912 (6th Cir. 2001) ("satellite communications" included "under the protection of § 605").

The undisputed evidence shows that defendants, without authorization from DirecTV, intercepted and displayed DirecTV satellite programming at St. Charles Tavern on June 16, 2012. First, there is no dispute that St. Charles Tavern displayed DirecTV satellite programming on June 16, 2012.[21] Second, DirecTV has provided evidence that St. Charles Tavern did not have authorization or a valid commercial account to display DirecTV's programming that day.[22] Defendants have submitted no evidence to contradict DirecTV on this point. Therefore, the Court finds that DirecTV has sufficiently established defendants liability under § 605(a).

---

[21]  *See* R. Doc 18-2 at 3-4; R. Doc. 18-3 at 2-3; R. Doc. 18-9 at 6 & 14.

[22]  *See* R. Doc. 18-2 at 3-4.

**B.    Whether the Violation Was "Willful" and for the Purpose of "Commercial Advantage"**

DirecTV also argues that defendants violated § 605 "knowingly and willfully," for the purpose of receiving a "financial benefit."[23] Such a finding would make DirecTV eligible for enhanced damages under § 605's statutory remedial scheme, which allows for enhanced damages in cases involving violations committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

Courts have defined "willful" under the statute as "disregard for the governing statute and an indifference for its requirements." *See, e.g.*, *ON/TV of Chicago v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985) (quoting *TransWorld Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)). Courts have found that violators meet this standard when the circumstances surrounding a violation suggest that the violation could not have occurred innocently or by accident. For example, in *Joe Hand Promotions, Inc. v. 152 Bronx, L.P.*, a commercial bar illegally intercepted and displayed a closed circuit telecast of a championship fighting match without paying the required licensing fee. *See* CIV.A. H-11-3406, 2014 WL 1312372, at *1, *5 (S.D. Tex. Mar. 26, 2014). The court found that the defendants' violation was

---

[23]    R. Doc. 18-11 at 9.

willful, reasoning that because the broadcast was

> electronically coded or scrambled . . . and therefore required using an unauthorized cable or satellite service and illegally altering the cable or satellite service or moving an unauthorized decoder or satellite card from its authorized location to the Establishment, there was no way the Defendants could have innocently accessed the broadcast of the Event.

*Id.* at *6; *see also Time Warner Cable v. Googies Lucheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.").

Like the cable companies in *Joe Hand Promotions* and *Times Warner Cable*, DirecTV encrypts its satellite programming and broadcasts it in scrambled form to keep non-customers from viewing the programming without authorization.[24] These scrambled broadcasts can be viewed only with the help of a DirecTV "Access Card," which allows customers to "receive and view in a decrypted format (*i.e.*, unscrambled) those channels to which the customer has subscribed."[25] DirecTV has established that defendants did not have a valid commercial account for St. Charles Tavern on June 16, 2012.[26] Therefore, defendants had no reason to have a

---

[24] *See* R. Doc. 18-2 at 2.

[25] *Id.*

[26] *See* R. Doc. 18-2 at 3-4.

DirecTV satellite dish at St. Charles Tavern that day, nor could they have had valid and legal means to descramble DirecTV's broadcast (such as an authorized Access Card). Yet it is undisputed that St. Charles Tavern did have a satellite dish and did display unscrambled DirecTV programming on June 16, 2012.[27] Because "signals do not descramble spontaneously," it follows that St. Charles Tavern could not have displayed DirecTV's programming on June 16, 2012 without taking intentional steps to circumvent DirecTV's security measures. *Time Warner Cable*, 77 F. Supp. 2d at 490.  Therefore, the Court is persuaded that defendants violation of § 605(a) was "willful."

Moreover, defendants clearly intercepted the broadcast for the purpose of commercial gain. St. Charles Tavern is a commercial bar and restaurant business that serves food and alcohol and has an estimated capacity of approximately 101-200 people.[28] Defendants displayed DirecTV programming during business hours and without authorization, which allowed them to provide a wider variety of entertainment without sustaining the incident costs. That the bar was equipped with two televisions demonstrates that the televisions were not for the personal viewing pleasure of the owner, but to provide entertainment to

---

[27]   *See* R. Doc. 13-3 at 2.

[28]   *See* R. Doc. 18-9 at 6-7, 14-15; R. Doc. 18-3 at 2.

occupy the customers in the bar.[29] Therefore, the Court finds that DirecTV has sufficiently established its claim that defendants violated § 605(a) "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

### C.  Damages

Summary judgment on defendants' liability leaves open the question of relief. Section 605 provides that a prevailing plaintiff may be eligible for injunctive relief as the Court may deem reasonable to prevent or restrain further violations of subsection (a). *See* 47 U.S.C. § 605(e)(3)(B)(i). Section 605 provides that a prevailing plaintiff may be eligible for monetary damages, which the plaintiff may elect to have computed as either actual or statutory damages. *See* 47 U.S.C. § 605(e)(3)(C)(I). If the Court awards monetary damages, the Court may enhance the damages if the Court finds that the defendant committed the violation "willfully and for the purposes of direct or indirect commercial advantage or financial gain," or reduce the damages, if the Court finds that the defendant "was not aware" or "had no reason to believe" he was violating § 605. *See* 47 U.S.C.

---

[29]  *See* R. Doc. 18-3 at 2-3.

§ 605(e)(3)(C)(ii)-(iii). Finally, a prevailing plaintiff is entitled to "full costs, including . . . reasonable attorneys' fees." 47 U.S.C. § 605(e)(3)(B)(iii).

DirecTV has requested the opportunity to brief the issue of relief separately. Therefore, the Court does not enter judgment with regard to relief at this time.

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiff's motion for partial summary judgment on the question of defendants' liability. Defendants are adjudged liable to plaintiff DirecTV for violation of 47 U.S.C. § 605.

New Orleans, Louisiana, this 20th day of June, 2014.

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE